JOHN WHITEHEAD, executor,

*v.*

ELOISE A. WILSON and others.

A husband gave to his wife the whole of his estate for her life, with power in his executors to sell so much thereof as might, in addition, be necessary for her support, and with a power of testamentary disposition in her as to one-half of what remained at her decease. At that time there was left but one lot of land. The wife, by will, gave certain legacies, etc., expressly payable out of the half subject to her disposi-

tion.—*Held*, that such legacies were charged on the undivided half of the remaining lot, and that a power of sale to raise this amount necessarily vested in her executors.

Bill for relief. On final hearing on bill and answer.

*Mr. John Whitehead, in pro. pers.*

*Mr. F. Adams*, for defendants.

THE CHANCELLOR.

Elymas P. Rogers, late of the city of Newark, deceased, by his will, dated June 4th, 1859, after directing payment of his debts and funeral expenses, gave, devised and bequeathed to his wife, Harriet, all his estate, real and personal, whatsoever and wheresoever, for her life. He then provided that if she should need, for her proper and respectable support, more than could be derived from the interest, income and profits of his estate, his executors, or the survivors of them, should sell and dispose of such parts of his estate as they, or the survivors of them, should deem advisable and necessary, and apply the proceeds of such sale and disposition to the support and maintenance of his wife, together with as much more as she should desire for the support of such person as she should choose or select as her attendant, friend or companion. He then provided that if there should be any part of his estate remaining at the decease of his wife, it should go, one-half to the children of his sister, and the other half to such person or persons as his wife should, by her last will and testament, direct, designate and appoint; and in case she should make no disposition of it by will, he gave it to her nephew and niece. He gave to his wife and his executors together power to sell his real estate, but no deed thereof was to be valid or effectual without his wife's consent to the sale and conveyance, evidenced by her signature to the deed. He died in the year 1861. He was seized at his death of a lot of land in

Newark, part of which was sold by his executors, with his wife's consent, and the balance of it remained unsold at the time of his wife's death. By her will, after referring to the gift by her husband, by his will, of the above-mentioned one-half of his estate to such person or persons as she should by her will direct, designate and appoint, she directed, designated and appointed that the expenses of her burial should be paid thereout, and also the cost of a burial lot and a head-stone for her grave, to be purchased by her executors, and the cost of the enclosure of the lot by them; and she gave them, out of that half of her husband's estate, enough money to answer those payments. She also directed that certain legacies should be paid therefrom, and that her executors should hold the balance in trust for certain persons therein named. She gave no power of sale in express terms.

At the time of the death of the testatrix, no part of her husband's estate remained, except the unsold part of the above-mentioned lot of land and premises. It is obvious that she intended that all the payments which she directed to be made, and all the legacies which she gave out of the half of the residue of her husband's estate, which, by his will, he had subjected to her testamentary disposition, should be charged on the half of the unsold portion of that lot; for, that portion of the lot was, as before stated, all that remained of her husband's estate. It follows that, as these payments are necessarily to be made, and the legacies paid out of real estate, the executors have, under the circumstances, by implication, from the fact that the property must be sold and the proceeds pass into their hands, to be by them administered, the power to sell the property. *Dewey* v. *Ruggles*, 10 *C. E. Gr.* 35. It was, indeed, in *Seeger* v. *Seeger*, 6 *C. E. Gr.* 90, in this court, denied that a power of sale is created by implication by the mere fact that it is necessary to enable the executors to execute the directions of the will. But clearly a power of sale may arise to executors by implication.

Said Sir John Romilly, M. R., in *Greetham* v. *Colton*, 34 *Beav.* 615, 619: "It has been held by the vice-chancellor of England, Sir Launcelot Shadwell, by Lord Cottenham, by Sir John Leach, and by Lord Justice Knight Bruce, that a general charge of debts on land enables the executors to sell the land and make a good title. I should be very sorry to do anything to weaken that decision; I myself so held in *Robinson* v. *Lowater*, after referring to the apposite case at law of *Doe d. Jones* v. *Hughes*, and the lord justices affirmed my decision. Therefore, independently of my own decision so confirmed, the uniform course, in equity, has been to compel purchasers to take a title from executors where there has been a general charge of debts which gives them an implied power of sale. The advantage of that practice is obvious, the amount of difficulty and expense it prevents is very great, and its convenience to the community is indisputable." See, also, the cases cited in *Dewey* v. *Ruggles*, *ubi supra.*